Lehman, J.
The plaintiff employed the defendant as broker to procure a purchaser for a house which she owned. The defendant brought her an offer for the sale of the house for the sum of $6,250, payable $5,000 by the execution of a purchase money mortgage at the rate of six per cent and $1,250 in cash. The plaintiff accepted this offer and signed a contract for the sale of the property on these terms. At the time when the plaintiff signed this contract of sale the defendant in fact had an offer for the purchase of the house for the sum of $6,750, of which $1,000 was to be payable in cash, $5,000 by the execution of a purchase money mortgage, and $750 by the execution of a second mortgage for $750 payable in installments, the last payment approximately ten months after the passing of title, and had actually no offer from any *172 real purchaser for a purchase upon the terms embodied in the contract signed by the plaintiff. The plaintiff’s contract was made with a dummy, who thereafter assigned it to the father of the defendant’s treasurer. He thereupon made a new contract in his own name with the purchasers upon the terms offered by them. As a result of this transaction the plaintiff received at the closing of the title $1,250 in cash and a mortgage for $5,000, which represented the amount upon which she was willing to sell the premises. She thereupon delivered a deed to the assignee of her contract of sale, the father of the defendant’s treasurer, who immediately transferred the title to the actual purchasers and received from them $1,000 in cash and a second mortgage of $750. In other words, if the plaintiff had made her contract of sale direct with the purchasers, she would have received $250 less than she actually received in cash, but would have received an additional mortgage for the sum of $750 payable in installments, and under the terms of this contract $250 was payable upon the second mortgage on or before September first of the same year, or approximately three months after the passing of title. The plaintiff now claims that she was never informed of the fact that the purchasers of the property had offered $500 more than the price at which she sold the property; that her brokers were in duty bound to inform her of any offer that was made, and that through the acts of the defendant she has been deprived of the sum of $500, which represents the profit made upon the transaction at her expense either by the defendant or by a client of the defendant wrongfully introduced into the transaction, and she has recovered a judgment for the loss so suffered, as well as for the commissions she has paid to the defendant.
*173 The plaintiff produced as one of her witnesses a discharged employee of the defendant, and upon his cross-examination his credibility was so impeached that for the purposes of this appeal I have entirely disregarded it, but even upon the defendant’s own testimony it seems to me that the trial judge correctly held that the plaintiff was entitled to.recover at least the sum of $500. According to the defendant, the actual purchasers of the premises offered originally $6,000 and then $6,250, and he brought these offers to the plaintiff, but this offer of $6,250 included a second mortgage of $500 and only $750 in cash. The plaintiff absolutely refused to consider any offer which included the taking of a second mortgage, and insisted that the full amount over the first mortgage of $5,000 be paid in cash. The defendant further claims that the purchasers refused to pay more than $1,000 in cash, but that they were willing to pay $1,000 in cash and $750 on the second mortgage. In order to prevent the sale from falling through, and with a desire to obtain for the plaintiff a purchase upon terms acceptable to her, he thereupon arranged with his father to act as an intermediary and pay $250 in cash and receive therefor a second mortgage of $750; that he never concealed from the plaintiff that his father was making this profit, and that on the date for the closing of title on May twenty-fourth and the actual closing of title on May twenty-ninth the plaintiff’s attorneys were necessarily fully aware of the whole transaction.
I am quite willing to assume that the defendant treasurer acted in this matter under the honest impression that the plaintiff had definitely refused to accept any second mortgage, even though she might thereby obtain a larger price than $6,250, and that the only way in which he could obtain for the plain *174 tiff a sale upon the price and terms demanded by her was through the intermediary of a third party who would advance the amount of cash necessary to consummate the transaction; yet the defendant knew that it was acting only as broker to procure a purchaser for the plaintiff’s property, and when it secured such a purchaser it was its absolute duty to inform its employer of the exact terms of. the offer. The seller had the right to determine for herself whether she would prefer to make the contract directly with the purchaser upon the terms offered by them or to make a contract with an intermediary whereby she received $250 more in cash. It is true that the broker procured for her a sale on the terms she demanded, but it was the duty of the broker if he could procure a purchaser upon better terms to do so. It is also probably true that the plaintiff had stated in advance in a general way that she would not accept a contract which included a second mortgage, even though she could thereby obtain a higher price, but nevertheless the defendant had no right to obtain a contract from the plaintiff by which either the broker or another client of the broker could profit without informing the plaintiff in advance of the true state of affairs. If the plaintiff had been' informed of the offer to purchase at $6,750 and had accepted this offer, she would under its terms have postponed the payment of $250 in cash for only three months, and in return for such postponement would have obtained a mortgage which if paid, as in fact it was paid, would have resulted in a payment to her of $500 more than she received. The broker had no right to presume, in spite of what had gone before, that the client would refuse this offer and however good his intentions may have been he must respond to the plaintiff for the profit which *175 she apparently lost through his failure to disclose to her the actual offer received.
In reaching this conclusion I have not overlooked the contention of the defendant’s attorney that the terms of this offer were disclosed to the plaintiff, but a careful examination of the record shows that this contention is not borne out by the testimony, and that the defendant did not at the trial even intend to claim that it brought this offer to the plaintiff, but merely that the plaintiff had been told prior to the time when she entered into the contract that the brokers could get her ‘ ‘ much more than $6,250 if she would take a second "mortgage.”
The defendant further maintains that the plaintiff had full knowledge of the transaction at the time when title passed in May, 1918, and that by failure to protest at that time she ratified the transaction. Probably at that time the plaintiff and her attorney had grounds for suspicion of what had occurred, but in my opinion she is not shown to have had actual knowledge of the fact that when she made the contract of sale on April 19, 1918, the defendant had already in his possession an offer from the ultimate purchasers to purchase upon the terms upon which the title to the property finally passed to them.
The trial justice has erroneously included in his judgment the sum of $156.25, the amount of the commission paid by the plaintiff to the defendant. The plaintiff is entitled to claim the benefit of the sale actually negotiated ■ by the broker, but in that case she cannot recover also commissions which she has paid to the broker and which the plaintiff would have been bound to pay to the broker if she accepts the benefit of his services.
Judgment should, therefore, be reduced by the sum of $156.25, with interest, and as modified affirmed, without costs to either party.